# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CAMILLE INGRAHAM individually and on behalf of all similarly situated individuals, | Case No.: |
| Plaintiffs, | **COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND** |
| v. | |
| VITAL RECOVERY SERVICES, LLC and VITAL SOLUTIONS, INC., | |
| Defendants, | |

COMES NOW THE PLAINTIFF, Camille Ingraham ("Ingraham" or "Plaintiff"), by and through her undersigned attorneys, bring this Collective and Class Action Complaint against Vital Recovery Services, LLC ("VRS") and Vital Solutions, Inc. ("Vital Solutions") (collectively, "Defendants") and state and allege as follows:

## <u>INTRODUCTION</u>

1. This is a Class and Collective Action brought by Plaintiff on behalf of herself and those similarly situated Collections Specialists who were employed at Defendants' call center in Georgia to recover for Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and alleged

contractual obligations (or unjust enrichment if no contract is found).

2.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendants' call centers, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary preliminary and postliminary activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit 1, at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails.")  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept."  *Id*.

3.      Further, the DOL issued guidance on the proper calculation method of overtime premiums. *See* DOL Fact Sheet #23, attached hereto as Exhibit 2, at 1 (". . . overtime pay due must be computed on the basis of the average hourly rate derived from such earnings. This is calculated by dividing by dividing the total pay for employment . . . in any workweek by the total number of hours actually worked.").

4.      Specifically, here, Plaintiff and those similarly situated, were subjected to Defendants' policy and practice of failing to compensate its call center employees for their necessary pre-shift and post-shift activities, which resulted in the failure to

properly compensate them as required under applicable federal and state laws. Further, in the weeks Plaintiff and those similarly situated worked more than 40 hours per workweek, Defendants failed to pay them the proper overtime pay for all their overtime hours worked in violation of the FLSA. This improper calculation of the overtime pay rate was a result of Defendants' willful failure to include non-discretionary commissions and/or bonuses earned in calculating Plaintiffs' proper overtime premium pay rate.

5.    Plaintiff seeks a declaration that their rights, the rights of the putative FLSA Class, and the rights of putative Rule 23 Classes were violated and seek to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

6.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

7.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be

maintained against any employer . . . in any Federal or State court of competent jurisdiction."

8.    This Court has supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

9.    Upon information and belief, Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

10.    Defendants' employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

11.    This Court has personal jurisdiction over VRS because VRS is registered with the Georgia Secretary of State to conduct business within Georgia and systematically and continuously conducts business within the State of Georgia.

12.    This Court has personal jurisdiction over Vital Solutions because Vital Solutions is registered with the Georgia Secretary of State to conduct business within Georgia and systematically and continuously conducts business within the State of Georgia.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conducted substantial business within this District and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

## PARTIES

14.     Plaintiff Ingraham is an individual who resides in the County of Gwinnett, City of Snellville, Georgia. Ingraham executed her Consent to Sue form, which is attached hereto, as Exhibit 3.

15.     Plaintiff, and those similarly situated, are current and former hourly Collections Specialists or other job titles performing the same or similar job duties (hereinafter, "Collections Specialists") who were employed by Defendants to perform work in Defendants' call centers in Georgia.

16.     Defendant Vital Solutions is domestic for-profit corporation with its principal place of business located at 4775 Peachtree Industrial Blvd., Suite #310, Peachtree Corners, Georgia, 30092. *See Vital Solutions Inc. Business Information,* Georgia Corporations Division Business Search, Georgia Secretary of State Brad Raffensperger, attached hereto as Exhibit 4.

17.     Vital Solutions "works nationwide in all time zones, and provides customized outsourcing solutions for various industries, with specialized programs

in the Automotive Finance, Credit Card and Utilities industries" and does so by assigning its clients "a team of specialists dedicated to nurturing a vital partnership with each client and, through sound, innovative programs, help them realize greater success and profitability." [1]

18.    Vital Solutions "provides these services through two wholly owned operating subsidiaries[.]"[2]

19.    VRS is one of Vital Solutions two wholly owned subsidiaries, "which is a fully licensed, national, third-party collection agency performing bad debt recovery and skip tracing services."[3]

20.    VRS's principal place of business is also located at 4775 Peachtree Industrial Blvd., Suite #310, Peachtree Corners, Georgia, 30092. *See Vital Recovery Services, LLC. Business Information,* Georgia Corporations Division Business Search, Georgia Secretary of State Brad Raffensperger, attached hereto as Exhibit 5.

21.    Defendants currently provide services through their employees, like Plaintiff and the putative FLSA Class, to "over 100 clients and $5.0 billion in annual placements[.]"[4]

---

[1] *About Us Overview & History*, Vital Solutions, https://vitalsolutions.net/about_us/ (last visited September 13, 2019).
[2] *Id.* (all caps in the original omitted).
[3] *Id.*
[4] *About Us Overview & History*, Vital Solutions, https://vitalsolutions.net/about_us/

22.    At all times relevant to this Action, Defendants were members of, and engaged in, a joint venture, partnership, or common enterprise, and were acting with the course and scope of, and in pursuance of said joint venture, partnership, or common enterprise in employing Plaintiff, and other similarly situated Collections Specialists.

23.    At all times relevant to this Action, Defendants were joint employers of Plaintiffs within the meanings of the FLSA, 29 U.S.C. § 203(d).

24.    On information and belief, Defendants acted as joint employers in the following ways: a) together, Defendants were involved in the development and implementation of their call centers' human resource policies, including, but not limited to, employee hiring, firing, supervision, and conditions of employment; b) together, Defendants were involved in the development and implementation of their call centers' payroll practices, including, but not limited to, how employees were paid, whether a job position was to be classified as exempt or non-exempt, how overtime premiums would be calculated, creating the pay scale be for each position, including the details concerning the non-discretionary bonuses and/or commissions; and c) together, Defendants were involved in the day-to-day business operations of their call centers, including but not limited controlling and supervising their

---

(last visited July 17, 2019).

- 7 -

employees' work schedules, supervising their employees' working conditions, reviewing their employees' time records, and creating and maintain employment records.

25.     Vital Solutions can be served through its Registered Agent, Corporation Service Company, located at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092. *See* Exhibit 4.

26.     VRS can be served through its Registered Agent, Corporation Service Company, located at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092. *See* Exhibit 5.

## GENERAL ALLEGATIONS

27.     Ingraham was jointly employed by Defendants as an hourly Collections Specialist from approximately November 2018 until approximately April 2019.

28.     Ingraham worked at Defendants' call center located at 4775 Peachtree Industrial Blvd., Suite 310, Berkeley Lake, Georgia 30092.

29.     Ingraham's rate of pay was $14.00 per hour, plus the ability to earn non-discretionary commissions and/or bonuses by meeting certain criteria and performance that Defendants set.

30.     Ingraham's primary job duties included, but were not limited to, providing customer service for Defendants' clients over the phone through collecting

on deficient accounts.

31.     Plaintiff, and others similarly situated, were regularly scheduled to work 40 hours per workweek and often worked in excess of 40 hours per workweek.

32.     In fact, Plaintiff was regularly scheduled to work Monday through Friday for at least 8 hours per day, and Plaintiff would occasionally work Saturdays.

33.     Regardless of the total number of hours Plaintiff was *scheduled* to work, Defendants regularly required Plaintiff to work a substantial amount of time off-the-clock as part of her job as a Collection Specialist in the call center and Plaintiff was never compensated for this time worked off-the-clock.

34.     29 C.F.R. § 553.221 provides that:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

35.     29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

***Pre-Shift Off-the-Clock Work***

36.     Plaintiff was tasked with providing Defendants' clients with customer service and collection services by use of Defendants' telephones, Defendants' computers, and the programs accessible by and through Defendants' computers and network.

37.     Defendants required Plaintiff, and all other similarly situated Collection Specialists, to arrive at the call center before their scheduled shifts to boot-up their computers, launch and log into necessary servers, programs, and/or applications, review any necessary materials, and log into Defendants' phone systems to ensure they were ready to make their first call at their scheduled shift start. This pre-shift procedure regularly takes 10 to 15 minutes pers shift, or more if technical issues arise. Plaintiff was not allowed to log into Defendants' time keeping system until the start of her scheduled shift.

38.     In order for Plaintiff, and all other similarly situated Collection Specialists, to perform their jobs, the pre-shift boot-up procedure was integral and indispensable to perform their principal job duties.

39.     The pre-shift boot-up procedure was integral and indispensable to Defendants' business because providing "a team of specialists dedicated to nurturing a vital partnership with each client and, through sound, innovative programs, help

- 10 -

them realize greater success and profitability"[5] means nothing if those specialists do not have access to their computers or phones.

40.     The unpaid pre-shift off-the-clock work performed by Plaintiff, and all other similarly situated Collection Specialists, directly benefits Defendants.

**Defendants' Policy and Practice of Suffering Off-the-Clock Work Violated the FLSA.**

41.     At all times relevant to this Action, Defendants suffered or permitted Plaintiff, and all other similarly situated Collection Specialists, to routinely perform off-the-clock pre-shift work.

42.     Defendants knew, or should have known, that their employees are required to be paid for all compensable times throughout the workweek. *See* 29 C.F.R. §§ 553.221; 790.8; 785.19(a).

43.     Defendants knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires employers to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rates of pay.

44.     Despite this, Defendants failed to compensate Plaintiff, and all other similarly situated Collection Specialists, for their off-the-clock pre-shift compensable work performed in any amount.

---

[5] *About Us Overview & History*, Vital Solutions, https://vitalsolutions.net/about_us/ (last visited July 17, 2019).

***Defendants' Policy and Practice of Failing to Include Non-Discretionary Bonuses and/or Commissions in Calculating Overtime Premiums Owed Violated the FLSA.***

45.     At all times relevant to this Action, Defendants' pay scheme incorporated the ability for Plaintiff, and all other similarly situated Collection Specialists, to earn non-discretionary bonuses and/or commission through sales by meeting certain criteria and performance that Defendants set.

46.     Defendants knew, or should have known, that for purposes of the FLSA an employee's "regular rate" of pay is determined by adding together the employee's total compensation—which includes the employee's hour rate and non-discretion incentive payments, such as bonuses and/or commission, and dividing the number by the total number of hours worked by the employee during the week in which the compensation was earned. *See* 29 U.S.C. § 207(e).

47.     Despite this, Defendants failed include non-discretionary commissions and/or bonuses earned in calculating to compensate Plaintiff's and all other similarly situated Collection Specialists' proper regular rates of pay and corresponding overtime premium pay rates for workweeks in which they worked in excess of 40 hours—whether as scheduled or due to working off-the-clock.

48.     In reckless disregard of the FLSA, Defendants adopted and then adhered to their practice of employing Plaintiff, and all other similarly situated

Collection Specialists, to perform compensable pre-shift off-the-clock work and then failing to compensate them at one and one-half times their regular rates of pay. Further, in reckless disregard of the FLSA, Defendants adopted and then adhered to their practices of improperly calculating their employees regular rate of pay, thereby failing to compensate Plaintiff, and all other similarly situated Collection Specialists, at the proper overtime premiums. These illegal practices resulted Plaintiff, and all other similarly situated Collection Specialists, not being paid correctly in violation of the federal law.

***Defendants' Policy and Practice of Failing to Record the Pre-Shift Off-the-Clock Work Violated the FLSA's Recording Provision.***

49.     29 C.F.R. § 516.1 subjects "every employer subject to any provision of the Fair Labor Standards Act" to maintain employee records.

50.     Employers subject to the FLSA, like Defendants are here, are mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee, each workday, and the total hours worked by each employee, each workweek. *See* 29 C.F.R. § 516.2.

51.     Upon information and belief, Defendants failed to establish, maintain, and preserve accurate timesheet and payroll records as required by the FSLA in not recording Plaintiff's and all other similarly situated Collection Specialists' pre-shift

off-the-clock work.

52.     When the employer fails to keep accurate records of the hours worked

by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680,

687-88 (1946) is controlling. The Supreme Court found:

> [w]here here the employer's records are inaccurate or inadequate . . . an
> employee has carried out his burden if he proves that he has in fact
> performed work for which he was improperly compensated and if he
> produces sufficient evidence to show the amount and extent of that
> work as a matter of just and reasonable inference. The burden then
> shifts to the employer to come forward with evidence of the precise
> amount of work performed or with evidence to negative the
> reasonableness of the inference to be drawn from the employee's
> evidence. If the employer fails to produce such evidence, the court may
> then award damages to the employee, even though the result be only
> approximate.

53.     The Supreme Court set forth this test to avoid placing a premium on an

employer's failure to keep proper records in conformity with its statutory duty,

thereby allowing the employer to reap the benefits of the employee's labors without

proper compensation as required by the FLSA. *See id*.

54.     Where damages are awarded pursuant to this test, "[t]he employer

cannot be heard to complain that the damages lack the exactness and precision of

measurement that would be possible had he kept records in accordance with . . . the

Act." *Id*.

## COLLECTIVE ACTION ALLEGATIONS

55.     Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) on

her own behalf and on behalf of:

> *All current and former Collection Specialists, or other job titles performing the same or similar job duties, who worked for Vital Solutions, Inc. and/or Vital Recovery Services, LLC. in Georgia at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to

amend this definition as necessary.

56.     Plaintiff does not bring this action on behalf of any executive,

administrative, or professional employees exempt from coverage under the FLSA.

57.     *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated"*

*Standard*: With respect to the claims set forth in this action, a collective action under

the FLSA is appropriate because, under 29 U.S.C. § 216(b), the Collection Specialist

call center employees described are "similarly situated" to Plaintiff. The class of

employees on behalf of whom Plaintiff brings this collective action are similarly

situated because (a) they were employed by Defendants in the same or similar

positions as Plaintiff; (b) they were subject to the same or similar unlawful practices,

policies, or plans as Plaintiff (namely, Defendants' practices, policy, or plan of

suffering them to work off-the-clock and then failing to pay them overtime

premiums and not considering non-discretionary bonuses or commissions in the

calculation of their employees regular rates of pay and overtime premiums owed to their employees); (c) their claims are based upon the same legal theories as Plaintiff; and (d) the employment relationship between Defendants and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

58.    Upon information and belief, Plaintiff estimates that the FLSA Collective, including both current and former call center employees over the relevant period, will include several hundreds, if not thousands of members who would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. The precise number of collective Class members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

59.    Plaintiff shares the same interests as the FLSA Collective in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, to the factual assessment and legal standards lend themselves to a collective action.

## THE RULE 23 CLASS ACTION ALLEGATIONS [6]

60.    Plaintiff brings this Action pursuant to Fed. R. Civ. P. 23 on behalf of

putative Class defined to include:

> *All current and former Collection Specialists, or other job titles performing the same or similar job duties, who worked for Vital Solutions, Inc. and/or Vital Recovery Services, LLC. in Georgia at any time in the last four years.*

(hereinafter referred to as the "Breach of Contract Class"). Plaintiff reserves the right

to amend this definition as necessary.

61.    *Numerosity*:   The members of the Breach of Contract Class are so

numerous that joinder of all members in the case would be impracticable, and the

disposition of their claims as a Class will benefit the parties and the Court. The

precise number of Class members should be readily available from a review of

Defendants' personnel and payroll records.

62.    *Commonality/Predominance*:   There is a well-defined community of

interest among Breach of Contract Class members and common questions of both

---

[6] To the extent the Court finds, or Defendant argues, the employment relationship between itself and its Collections Specials did not form an oral contract, Plaintiff reserves the right to seek Rule 23 class certification under Plaintiff's and the Class' quasi-contract claims. (Count III).

law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a.   Whether Defendants offered to pay Plaintiff and the Breach of Contract Class certain hourly rates, with the opportunity to earn non-discretionary bonuses and/or commissions, for each hour worked as Collection Specialists in Defendants' call centers;

b.   Whether Plaintiff and the Breach of Contract Class accepted Defendants' offer orally and continued to accept Defendants' offer by performing the essential functions of the job;

c.   Whether Defendants' breached the oral contract by failing to pay Plaintiff and the Breach of Contract Class properly for each and every hour worked—whether pre-shift off-the-clock or scheduled; and

d.   Whether Plaintiff and the Breach of Contract Class were damaged.

63.   *Typicality*:  Plaintiff's claims are typical of those of the Breach of Contract Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices.  Plaintiff's claims arise from Defendants' same policies, practices, and course of conduct as all other Breach of Contract Class members' claims and

Plaintiff's legal theories are based on the same legal theories as all other Breach of Contract Class members: 1) whether all Breach of Contract Class members were employed by Defendants on an hourly basis and were suffered to work pre-shift without compensation; and 2) whether all Breach of Contract Class members were employed by Defendants on an hourly basis with a compensation scheme that included non-discretionary bonuses and/or commissions that Defendants failed to include in calculating the Breach of Contract Class's regular rates of pay and subsequent overtime premiums.

64.    *Adequacy*:  Plaintiff will fully and adequately protect the interests of the Breach of Contract Class. Plaintiff retained national counsel who is qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel has interests that are contrary to, or conflicting with, the interests of the Breach of Contract Class.

65.    *Superiority*:  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible Breach of Contract Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual. Given the material similarity of Breach of Contract Class members' claims, even if each Class member could afford to litigate a separate claim, this Court

should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative class' claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

66.     The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Breach of Contract Class within that group a separate opt-out notice pertaining to their rights under the common law. Plaintiff and her counsel knows of no unusual difficulties in the case and Defendants have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## CAUSES OF ACTION

### COUNT 1- VIOLATION OF THE FLSA
*(On Behalf of Plaintiff and the FLSA Collective)*

67.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

68.     At all times relevant to this Action, Vital Solutions, Inc. was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

69.     At all times relevant to this Action, Vital Recovery Services, LLC. was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

70.     At all times relevant to this Action, Defendants were members of, and engaged in, a joint venture, partnership, or common enterprise, and were acting with the course and scope of, and in pursuance of said joint venture, partnership, or common enterprise in employing Plaintiff, and all other similarly situated Collection Specialists.

71.     At all times relevant to this Action, Defendants engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

72.     At all times relevant to this Action, Plaintiff was an employee of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

73.     At all times relevant to this Action, the putative FLSA Class of similarly situated Collection Specialists  were "employee[s]" of Jefferson within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

74.     At all times relevant, Plaintiffs, and all other similarly situated Collection Specialists, either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

75.     The position of Collection Specialists is not exempt from the FLSA.

76.     Defendants' other job titles performing similar call center job duties are not exempt from the FLSA.

77.     At all times relevant to this Action, Defendants "suffered or permitted" Plaintiff, and all other similarly situated Collection Specialists, to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

78.     Plaintiff, and all other similarly situated Collection Specialists, were regularly scheduled to work 40 hours per workweek and often worked in excess of 40 hours per workweek.

79.     The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

- 22 -

80.    Despite this, Defendants failed to pay Plaintiff, and all other similarly situated Collection Specialists, for their pre-shift off-the-clock work performed in excess of 40 hours per workweek in any amount.

81.    Further, for purposes of the FLSA, an employee's "regular rate" of pay is determined by adding together the employee's total compensation—which includes the employee's hour rate and non-discretion incentive payments, such as bonuses and/or commission, and dividing the number by the total number of hours worked by the employee during the week in which the compensation was earned. *See* 29 U.S.C. § 207(e).

82.    Despite this, Defendants failed to include non-discretionary bonuses and/or commissions in calculating Plaintiff's, and all other similarly situated Collection Specialists', regular rates of pay and corresponding overtime premiums.

83.    As a result of 1) failing to pay Plaintiff, and all other similarly situated Collection Specialists, for their pre-shift off-the-clock work performed in excess of 40 hours per workweek in any amount; and 2) failing to properly calculate overtime premiums of Plaintiff, and all other similarly situated Collection Specialists, Defendants routinely suffered and permitted Plaintiff, and all other similarly situated Collection Specialists, to work more than 40 hours per workweek without receiving proper overtime premiums in violation of the FLSA.

84.    Defendants' conduct as it is alleged in this Complaint constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255, as Defendants knew, or showed reckless disregard for the fact their compensation practices violated the FLSA.

85.    None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the putative FLSA Class.

86.    As the direct and proximate result of Defendants' unlawful conduct, Plaintiff, and all other similarly situated Collection Specialists, have suffered a loss of income and other damages. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages at the proper overtime rate, plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT 2- BREACH OF ORAL CONTRACT
### (On Behalf of Plaintiff and Rule 23 Breach of Contract Class)

87.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

88.    Plaintiff was jointly hired by Defendants as an hourly Collections Specialist beginning in, or around, November 2018.

89.    Defendants' offered to pay Plaintiff $14.00 per hour, plus the ability to earn non-discretionary commissions and/or bonuses by meeting certain criteria and

performance that Defendants set, to perform the job duties of an hourly Collections Specialist.

90.    Plaintiff's primary job duties included, but were not limited to, providing customer service for Defendants' clients over the phone through collecting on deficient accounts.

91.    Plaintiff orally accepted Defendants' offer.

92.    Plaintiff also accepted the offer via her performance—i.e., reporting for work and performing her primary job duties, including but not limited to, providing customer service for Defendants' clients over the phone through collecting on deficient accounts.

93.    The Breach of Contract Class members were hired at various dates and times throughout the past four years.

94.    Defendants offered to pay the Breach of Contract Class members certain hourly rates per hour for each hour worked , plus the ability to earn non-discretionary commissions and/or bonuses by meeting certain criteria and performance that Defendants set, to perform the job duties of an hourly Collections Specialist (or other job title performing the same or similar job duties). Each Breach of Contract Class members' contractual hourly rate is identified in paystubs and other employment records that Defendants prepare and maintain as part of their regular business activities.

- 25 -

95.     The Breach of Contract Class members accepted Defendants' offers orally and/or by performance—i.e., reporting for work and completing the tasks assigned to them.

96.     Plaintiff's work, and that of the Breach of Contract Class, required pre-shift boot-up time.

97.     Plaintiff and the members of the Breach of Contract Class performed under their contract by doing their jobs, in addition to carrying out the pre-shift uncompensated activities that Defendants required.

98.     Upon information and belief, Defendants do not allow their employees to clock in and begin being compensated until after the employee performs his or her pre-shift boot-up procedure.

99.     Despite performing integral and indispensable pre-shift work, Defendants did not compensate Plaintiff or the members of the Breach of Contract Class for their time at their hourly rate of pay in workweeks Plaintiff and the Breach of Contract Class worked a total of 40 hours or less.

100.    By failing to pay Plaintiff and the Breach of Contract Class for their pre-shift off-the-clock boot-up time, Defendants breached their contracts with Plaintiff and the Breach of Contract Class to pay for each hour worked.

101.   As a direct and proximate cause of Defendants' breach, Plaintiff and the Breach of Contract Class were damaged at an amount to be proven at trial.

## COUNT 3- QUASI-CONTRACTUAL REMEDIES: UNJUST ENRICHMENT
### *(On Behalf of Plaintiff and Rule 23 Breach of Contract Class)*

102.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

103.   Upon information and belief, Plaintiff and the Breach of Contract Class pre-shift boot-up time provided valuable work and income for Defendants; namely, directly benefitting Defendants by completing integral and indispensable tasks in order to provide customer service and collection services to Defendants' clients.

104.   Plaintiff and the Breach of Contract Class were unable to perform any job function without booting up and logging into their computer and required programs. In short, in order to start their work of making customer calls and providing collection services to Defendants' clients, precisely at Plaintiff's and the Breach of Contract Class's designated start times, Plaintiff and the Breach of Contract Class were required to work off-the-clock before their shifts began. Without the pre-shift boot up work performed, Plaintiff and the Breach of Contract Class would be unable to perform their essential job duties, servicing Defendants' clients.

105.   As part of their ongoing employment relationships with Defendants, Plaintiff and the Breach of Contract Class expected to be paid their wages for the time

they spent performing their jobs, including the performance of necessary pre-shift boot-up activities.

106.   By not paying Plaintiff and the Breach of Contract Class for the time they spent performing integral and indispensable pre-shift boot-up activities, Defendants have been unjustly enriched at the expense of Plaintiff and the Breach of Contract Class, in an amount to be determined at trial.

107.   By not paying Plaintiff and the Breach of Contract Class for the time they spent performing integral and indispensable pre-shift boot-up activities, Defendants have also save themselves hundreds-of-thousands of dollars in unpaid payroll taxes—taxes that would have otherwise been credited to Plaintiff's and the Breach of Contract Class members' benefit.

108.   It would be unjust and inequitable to allow Defendants to retain the benefit of work performed by Plaintiff and the Breach of Contract Class without compensation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff request the following relief:

A.   An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

B.   An Order designating Plaintiff to act as the FLSA Collective

Representative, on behalf of all similarly individuals;

C.     An Order certifying this action as a class action for the Rule 23 Breach of Contract Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff's Counsel to send notice of this action to all similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

E.     An Order declaring that Defendants willfully violated the FLSA and its attendant regulations as set forth above;

F.     An Order declaring that Defendants violated its obligations under the FLSA;

G.     An Order granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of 40 hours per week for the past

three years for Plaintiff and the FLSA Class;

H.      An Order awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid overtime found owing to Plaintiff under the FLSA;

I.      An Order granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid hourly wages calculated at Plaintiff's regular rate of pay multiplied by all hours that Plaintiff worked off-the-clock in workweeks totaling 40 hours or less for the past four years for Plaintiff and the Breach of Contract Class;

J.      An Order awarding reasonable attorney fees and costs incurred by Plaintiff in filing this action;

K.      An Order awarding pre-judgment interest to Plaintiff and the FLSA Collective (to the extent liquidated damages are not awarded) and post-judgment interest to Plaintiff on these damages; and

L.      An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

NOW COME Plaintiff, by and through her Attorneys, and hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: September 16, 2019

By: /s/ *Cale Conley*
Cale Conley (GA Bar. No. 181080)
**CONLEY GRIGGS PARTIN, LLP**
4200 Northside Parkway NW
Building One, Suite 300
Atlanta, GA 30327
Telephone: (404) 809-2580
Fax: (404) 467-1166
cale@conleygriggs.com

*Local Counsel for Plaintiffs*

Molly E. Nephew (MN Bar No. 397607)*
**JOHNSONBECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1800
mnephew@johnsonbecker.com

*Trial Counsel for Plaintiffs*

*PHV Anticipated